UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KEITH M. KOSHMAN,**

         **Plaintiff,**

-vs-                                                                         Case No. 6:05-CV-459-ORL-28KRS

**JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,**

         **Defendant.**

_____

# REPORT AND RECOMMENDATION

## TO THE PRESIDING DISTRICT JUDGE

This matter came before the Court for consideration after oral argument on the Complaint filed by Keith M. Koshman, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the transcript of the record of the proceedings before the Social Security Administration ("SSA"). Doc. No. 5. This matter has been referred to me pursuant to Middle District of Florida Local Rule 6.01(c)(21) for issuance of a report and recommendation.

**I.      PROCEDURAL HISTORY.**

In May 2000, Koshman filed a claim for disability benefits under the Supplemental Security for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* R. 70-74. The application was denied initially and on reconsideration. R. 41-47. Koshman requested

a hearing before an administrative law judge ("ALJ").  R. 40.

The ALJ held the hearing on June 2, 2002. Koshman, who was not represented by an attorney, testified at the hearing.[1]  R. 225-34.  Laverne Walker, Koshman's mother, also attended the hearing.  R. 54, 223.  When Koshman asked about presenting his mother as a witness, the ALJ stated: "I've got your testimony.  I'm sure she's just going to substantiate the problems you're having."  R. 234.

After considering this testimony and the medical evidence presented, the ALJ found that Koshman had not engaged in substantial gainful activity since June 11, 1995, the alleged onset date of his disability.  R. 19, 23.  The ALJ concluded that the medical evidence showed that Koshman had degenerative disc disease of the spine following back surgeries, which impairment did not meet or equal any of the impairments listed in the social security regulations.  R. 21.  The ALJ found that Koshman's diabetes and mild depression were not severe impairments.  R. 21.

The ALJ found that Koshman had the residual functional capacity ("RFC") to perform light work,[2] with the ability occasionally to climb, stoop, and crouch.  R. 22.  In reaching this conclusion, the ALJ gave little weight to the opinion of Dr. Palazzolo, a consulting physician,

---

[1] Koshman does not assert that his waiver of the right to representation was invalid.

[2] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

because he found it to be outdated and inconsistent with the record as a whole. R. 22. The ALJ also found Koshman' testimony about the limitations arising from his impairments to be somewhat exaggerated and not totally credible. R. 21, 23.

Because Koshman's past work required more than a light level of exertion, the ALJ concluded that Koshman could not return to his past relevant work. R. 22. Using the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that there were a significant number of jobs available in the national economy that Koshman could perform. R. 23. Therefore, the ALJ concluded that Koshman was not disabled. R. 22-23.

Koshman requested review of the ALJ's decision. R. 11. He submitted an additional medical assessment from Dr. Broom, one of Koshman's treating physicians, to the Appeals Council for consideration. R. 219-22. On February 3, 2005, the Appeals Council found no basis for review of the ALJ's decision. R. 4-5. It stated that Dr. Broom's medical assessment did not affect the determination regarding whether he was disabled because it related to a later time than that period considered by the ALJ. R. 5. Koshman timely sought review of this decision by this Court. Doc. No. 1.

## II.    JURISDICTION.

The Commissioner issued a final decision after a hearing with respect to Koshman's application for disability benefits under SSI. Therefore, the Court has jurisdiction of this matter under 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

**III.   STATEMENT OF FACTS.**

Koshman was born on June 17, 1956.  R. 226.  He completed nearly three years of college.  R. 226.  He previously worked as an electrician.  R. 231.

Koshman injured his back in June 1995 while engaged in heavy lifting.  R. 143.  At the hearing, Koshman complained of chronic back pain that radiated down his left leg.  R. 226-27.  In the morning, his thighs were numb.  R. 227.  He sometimes had the feeling of electric jolts shooting down his leg.  R. 228.  Medication helped to alleviate the pain, but he still woke up in pain every morning. He had bad days in which the medication did not relieve the pain.  R. 227.  Pain medication caused him to be dizzy.  R. 85.

Koshman also had a neck injury that caused his hands to shake.  R. 228.  Additionally, he had diabetes, which was somewhat controlled by medication.  R. 229.

Koshman lived with his mother.  R. 81.  In a typical day, Koshman would try to exercise and take his dogs for a walk.  He could walk about fifteen minutes on a bad day, about up to two hours on a good day.  R. 230.  However, he needed to rest after five to ten minutes of walking.  R. 115, 233.[3]  During the day, he would search for work on the computer. R. 230.  He had difficulty concentrating due to pain and depression, and he was quick to anger.  R. 91.

He would occasionally cook and do some cleaning, but he could not lift a basket to do the laundry.  R. 230.  He was able to drive around town.  R. 231.  He could lift one bag of groceries at a time.  R. 232.  He could stand or sit five to ten minutes. R. 232-33.  He needed assistance getting out of the bathtub.  R. 81.  His attention to personal hygiene had

---

[3] In September 2002, Koshman wrote to the ALJ.  He stated that his pain had worsened to the point that he could no longer take walks.  He reported that he was "angry all the time" and that he could not concentrate sufficiently "to even hold a simple thought."  R. 115.

decreased, and he did not care about his appearance. R. 91.

The medical records indicate that Koshman began experiencing back pain radiating down his left leg into his foot in May 1995. He had disc surgery performed in August 1996. R. 117.

In March 1997, Eugene Lipov, M.D., examined Koshman at the request of Daryl Luke, M.D. Koshman complained of pain in his back radiating into his left leg and foot. The pain was exacerbated by bending, walking, standing and stress, among other things, but it was alleviated by lying down, medication and use of a TENS unit, among other things. R. 122. Upon examination, Dr. Lipov confirmed that Koshman experienced pain through a straight-leg-raising test and a pinprick test at the L5 nerve root. An MRI revealed a previous discectomy/laminectomy with a scar involving the L5/S1 nerve root and a mildly protruding disc at L5/S1. R. 123. Dr. Lipov's assessment was lumbosacral radiculopathy with epidural scarring of the L5 nerve root on the left side. Dr. Lipov treated Koshman with epidural injections. R. 120-23. The injections helped relieve the leg pain, but not the back pain. R. 188. In July 1997, Dr. Lipov wrote to the Illinois Department of Rehabilitation Services that Koshman needed a discogram to confirm that his pain resulted from problems with discs in his spine. If the problems were confirmed, Dr. Lipov indicated that Koshman would be a candidate for spinal fusion. R. 118.

Koshman had a laminectomy performed on October 22, 1998. R. 195. The records of this procedure are not before the Court.

Sometime before January 1999, Michael J. Broom, M.D., began treating Koshman. R. 195. Koshman complained of discomfort, with some numbness in the right leg with prolonged standing. He took Lortab to keep active. He was able to walk up to a mile at a

time. Dr. Broom suggested a trial of OxyContin for pain relief. R. 195.

Koshman hyper extended his back later in January, which caused excruciating back pain. Dr. Broom treated him with an injection and continued use of Lortab and oxycodone. R. 194. Koshman reported that the injection only helped relieve his pain for about one week. However, Koshman continued to walk one or more miles per day. Dr. Broom increased Koshman's prescription of OxyContin and added a prescription for Vicodin. He also referred Koshman to physical therapy. R. 193.

In May 1999, Koshman reported that he was in school and that his activity had increased. He still had back pain, but no significant radicular pain. R. 192.

In July 1999, Koshman complained of worsening back and left leg pain with some right leg pain. Dr. Broom opined that an MRI taken in June was consistent with pseudoarthritis or fusion, non-healing. R. 189-91. Dr. Broom recommended surgery to repair the problem. R. 189.

In August 1999, Koshman had a third back surgery performed by Dr. Broom. The operative reports indicate that the preoperative and postoperative diagnoses were L5-S1 pseudoarthrosis and spondylolisthesis with radicular symptoms. R. 134.

In September 1999, Koshman reported a fair amount of right hip and leg discomfort that was slowly improving. R. 184. Dr. Broom noted tenderness and palpation producing radiating leg pain, but no motor deficits in the lower extremities. R. 184. Koshman reported improvement from October 1999 through January 2000. R. 181-83. Among other things, Koshman was doing a lot of walking, he climbed stairs, and played miniature golf. *Id.* Dr. Broom limited Koshman to lifting no more than twenty pounds, with no repetitive twisting and bending. R. 181.

In February 2000, Koshman reported that his back pain had worsened apparently due to increased activities, including attending school and driving to Georgia. Dr. Broom allowed Koshman to increase his OxyContin. R. 180.

Marc Gerber, M.D., began treating Koshman in March 2000 for pain management. At that time, Koshman still had chronic pain, and some numbness and tingling on the left side. He was in school studying to be a recording engineer, and he was trying to increase his activities. R. 179. Upon examination, Dr. Gerber noted that Koshman had decreased range of motion on flexion and extension of his back, but his gait was normal. Dr. Gerber's assessment was chronic low back pain with left radicular symptoms. He continued to treat Koshman with OxyContin and Oxyir for breakthrough pain. R. 178.

In April, May and again in July, around the time Koshman submitted his SSI application, Dr. Gerber increased the dosage of OxyContin due to Koshman's complaints of pain. R. 171, 175-77. On examination in May 2005, Dr. Gerber observed that Koshman had a mildly antalgic gait, decreased range of motion, and some discomfort on a straight-leg-raising test, with decreased left ankle reflex. R. 175. Koshman reported that OxyContin made him feel like he was "stoned." R. 165. Dr. Gerber treated Koshman with a epidural injection, but it did not relieve the pain. R. 142, 173. He also prescribed Effexor to improve Koshman's mood. R. 173. In September, Koshman continued to complain of low back and bilateral leg pain. R. 169. He reported that he was trying to be very active, was in school, and was doing some band work. R. 169.

On September 28, 2000, Arlene Palazzolo, M.D., examined Koshman at the request of the SSA. Koshman complained of chronic lower back pain and left leg pain, with tingling and numbness in his left leg. R. 143. On examination, Dr. Palazzolo observed that

Koshman had decreased muscle strength in his legs, more on the left than the right. She also noted tenderness in his left knee and spine, with limited spinal range of motion. He walked with a limp. Dr. Palazzolo opined that Koshman could lift no more than twenty pounds. He could not bend, or push and pull, and would require a job at which he would not sit or stand too long, or one in which he could change positions easily. R. 145.

In October 2000, David Z. Kitay, M.D., prepared an RFC assessment based on a review of Koshman's medical records. Dr. Kitay opined that Koshman could lift and carry ten pounds occasionally and twenty pounds frequently. He could stand or walk at least two hours and sit about six hours in an eight-hour workday. He could only occasionally climb, stoop, kneel or crouch. R. 150-57.

In November 2000, William W. Austin, Psy.D., examined Koshman at the request of the SSA. Koshman complained of constant pain and spasms in his right leg, and pain in his left leg. Dr. Austin observed that Koshman walked with a slow, stiff gait. He had been attending an audio recording technology school, but he had to withdraw for four months due to chronic pain. He lacked energy and isolated himself. He stated that, on a good day, he could watch television and use the computer. He enjoyed reading, writing music and playing the guitar. He was able to cook occasionally and take care of small maintenance tasks at home. He had friends with whom he visited and occasionally went out to eat or to a movie. Dr. Austin's assessment was that Koshman had an adjustment disorder with depressed mood. R. 158-59.

Also in November 2000, K. Eeltink, Ph.D., prepared a psychiatric review technique form based on a review of Koshman's records. Dr. Eeltink concluded that Koshman would have mild restriction of activities of daily living, mild difficulties in maintaining social

functioning and concentration, persistence and pace. R. 162. Angela C. Register, Ph.D., reached a similar opinion when she reviewed Koshman's records in April 2001. R. 204-08.

Sometime before December, Dr. Gerber switched Koshman from OxyContin to a Duragesic patch, which provided better pain relief. Dr. Gerber also prescribed Roxicodone for breakthrough pain. Upon examination on December 27, 2000, Koshman was walking normally, and indicated that he had done a lot of walking through theme parks with less pain than previously. R. 167.

In February 2001, Dr. Broom examined Koshman. At that time, Koshman complained of neck pain radiating into his arm that was not resolved by medication. He also had numbness and tingling in his right arm and some hand shaking. A radiograph showed mild narrowing at C5-6 and spurring at C5 with some straightening of the cervical spine. Dr. Broom's impression was cervical degenerative disc disease with mild sprain, which he treated with an injection, medication and physical therapy. R. 166.

In March 2001, Koshman told Dr. Gerber that he still had chronic pain, but that the medication was working well. Upon examination, Dr. Gerber observed that Koshman still had limited range of motion in the lumbar spine, but that he was walking normally. He also had mild limitation of motion, with pain, in his neck. There was no significant improvement in Koshman's scores on the Beck Depression Inventory. Dr. Gerber continued to treat Koshman with pain medication and Effexor. R. 165.

In March 2001, Violet Stone, M.D., prepared an RFC assessment based on a review of Koshman's records. Dr. Stone's assessment was consistent with that previously rendered by Dr. Kitay, except that Dr. Stone concluded that Koshman could stand or walk about six hours in an eight-hour workday. R. 196-203.

In March 2002, Michael Ham-Ying, M.D., examined Koshman. His assessment was that Koshman had diabetes mellitus, hypertension, chronic back pain, and that he was obese. R. 210.

Drs. Broom and Gerber continued to treat Koshman through 2002 with pain medication and muscle relaxants. Koshman continued to complain of pain on each visit to these doctors. R. 212-18. In a questionnaire prepared on February 3, 2003, which was submitted to the Appeals Council, Dr. Broom opined that Koshman could lift ten pounds at a time, sit for six hours a day, walk or stand for two hours a day, bend, stoop and twist. He would have difficulty with some manipulative functions, and he could have difficulty functioning due to nervousness, anxiety, and depression, including difficulty maintaining attention and concentration. Dr. Broom reported that these impairments and limitations existed since Koshman stopped working in 1995. R. 222.

## IV.   STANDARD OF REVIEW.

To be entitled to Social Security disability benefits under SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[4] Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry which must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

---

[4] A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g., McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987) (per curiam).

This Court's review of a final decision issued by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *McDaniel*, 800 F.2d 1029-30 (per curiam). While a great deal of deference is paid to the ALJ's factual findings, "[n]o similar presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Id*. at 1000. Even if the Court finds that the evidence weighs against the SSA's decision, it must affirm if the decision is supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh the evidence or substitute its own judgment for that of the SSA. *Id*. When

reviewing a final decision issued by the SSA, this Court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**V.   ANALYSIS.**

Koshman contends that the ALJ erred by refusing to consider his mother's testimony. He also asserts that both the ALJ and the Appeals Council failed to consider all of the medical evidence. He submits that the ALJ's assessment of his credibility was not supported by substantial evidence, arguing, among other things, that the ALJ relied on only selective parts of the evidence regarding his activities of daily living. These are the only issues I will address.[5]

*A.   Failure to Consider Evidence and Assessment of Credibility.*

Koshman's mother, Laverne Walker, was present at the ALJ's hearing. R. 223. When the ALJ asked Koshman if he had anything else to present, Koshman stated that his mother was always "bringing up you can't do this, you can't do that. . . . She sees more than I do." R. 223. Koshman noted that the papers he received said that he could present witnesses, and asked whether the ALJ did not think witnesses were relevant. R. 234. The ALJ responded, "I've got your testimony. I'm sure she's just going to substantiate the problems you're having." R. 234.

---

[5] At the hearing before me, counsel for Koshman argued that the SSA erred by failing to provide Koshman with an application for Federal Old Age, Survivors and Disability Insurance benefits ("OASDI"), 42 U.S.C. § 401 *et seq.*, at the time it provided him with the SSI application. Because this issue was not raised in Koshman's memorandum, it should not be considered. *See* Scheduling Order, doc. no. 7 at 2 (doc. no. 7) ("Any issue not specifically raised by the plaintiff will be considered waived unless the interests of justice require the Court to consider the issue."). Furthermore, nothing prohibits Koshman from submitting and OASDI application now.

This colloquy, fairly read, indicates that Koshman, who was representing himself, wished to present his mother's testimony in support of his claim. In layman's terms, he proffered that his mother would have a different perspective on what he was able to do.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. This obligation exists even if the claimant is represented by counsel or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (internal citations omitted). This obligation includes obtaining testimony from family members, if presented by the claimant. In *Cowart*, the United States Court of Appeals for the Eleventh Circuit found that the ALJ failed to develop the record when he did not solicit testimony from the claimant's spouse, who was present at the hearing. The court stated, "We realize that testimony from a claimant's spouse might be accorded less weight than testimony from a disinterested witness, but this provides no good reason to fail to elicit the testimony in the first place." *Id.*[6]  Similarly, in *Brown v. Shalala*, 44 F.3d 935 (11th Cir. 1995), the Eleventh Circuit faulted the ALJ for failing to consider the testimony of the claimant's spouse, who appeared at the hearing. The court stated, "'Any lawyer prepared for a hearing ... would realize that the statement of such subjective matters by the claimant would be the kind of evidence that most required supporting testimony by family or friends.'" *Id.* at 936 (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (11th Cir. 1981)). The *Brown* court concluded that even if the claimant effectively waived her right to counsel, the SSA decision must be reversed because of the failure to develop a full and fair record, among other things.

---

[6] In *Cowart*, the court had a special duty to develop the record because the claimant did not effectively waive her right to counsel. 662 F.2d at 734.

The evidence in the present case established that Koshman lived with his mother. She was, therefore, a person with personal knowledge of Koshman's functional ability. Although the ALJ may have given her testimony less weight than that of a neutral observer, he should have considered her testimony in reaching the decision about whether Koshman's complaints were credible. His refusal to do so requires that the SSA's decision be reversed, and that the matter be remanded for a more complete development of the record.[7]

    B.    *Failure to Consider All of the Medical Evidence.*

Koshman contends, essentially, that because the ALJ did not recite each conclusion reaching by Koshman's treating physicians, the ALJ failed to consider all of the medical evidence. The ALJ's decision reflects that he reviewed all of the medical evidence presented. It was not necessary for him to cite to every medical opinion contained in that evidence so long as it is clear that he considered all of the evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Koshman also asserts that the Appeals Council erred when it stated that Dr. Broom's medical assessment did not pertain to the relevant time. Counsel for the Commissioner conceded at the hearing in this case that the Appeals Council statement was incorrect. Dr. Broom's medical assessment expressly states that it relates to the time at issue. Because Dr. Broom was one of Koshman's treating physicians, his opinion regarding Koshman's functional capacity was entitled to great weight unless good cause is shown to the contrary. *See, e.g., Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Accordingly, on remand the

---

[7] Because the record has not been fully developed, Koshman's request that the Court order that he be awarded disability benefits cannot be granted. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (noting that remand for an award of benefits is appropriate only when the Commissioner has considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt).

SSA should consider this medical assessment.

## VI.    RECOMMENDATION.

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **REVERSED** and that this case be **REMANDED** for further proceedings. I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Orlando, Florida on this 3rd day of February 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Parties